IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Life Insurance Company, | ) | C/A No. 3:15-3737-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michelle M. McCreary; Jean Bankett; | ) | |
| American Funeral Financial, LLC; | ) | |
| American Capital Funding, LLC; and | ) | |
| C&J Financial LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This interpleader action concerns Jean Bankett's ("Bankett") entitlement to the insurance benefits due under a policy of life insurance that is in the name of her deceased son, Rodney M. Moore ("Decedent"). This matter comes before the court on the motion for attorneys' fees by Bankett [ECF No. 58] and by American Funeral Financial, LLC ("American Funeral") and C&J Financial LLC ("C&J") (collectively "Financial Firms") [ECF No. 57].

I.      Factual and Procedural Background

The court made findings of facts by prior order dated January 11, 2016 ("Order") [ECF No. 28], which are repeated herein for reference. Before he died on June 11, 2015, Decedent was employed by The Society of St. Vincent de Paul ("Employer"). Employer maintained group life insurance coverage with Companion Life Insurance Company ("Companion") for the benefit of its employees as part of an employee welfare benefit plan ("Plan") governed by the Employment Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.* On January 10, 2013, Decedent enrolled in the Plan's basic group term life and accidental death and dismemberment insurance policy (Policy Number 932-25-71390-000) ("the Policy") for $60,000, and designated Bankett as the sole beneficiary under the Policy. [ECF No. 1-1]. He made no further changes to his beneficiary designation.

Upon Decedent's death, Bankett submitted a Group Life Insurance Claim Form dated June 15, 2015, to Companion, requesting the Policy proceeds be distributed to her. [ECF No. 1-6]. Bankett assigned the following interests in the Policy proceeds to pay for her son's funeral expenses:

(1)     $8,533.87 assignment on June 15, 2015, to defendant American Funeral Financial, LLC ("American Funeral") [ECF No. 1-3];

(2)     $10,180.64 assignment on June 19, 2015, to defendant American Capital Funding, LLC ("American Capital")[1] [ECF No. 1-4].

(3)     $3,757.73 assignment on June 19, 2015, to defendant C&J Financial, LLC ("C&J") [ECF No. 1-5].

Companion also received a letter from defendant Michelle M. McCreary ("McCreary") dated July 8, 2015, indicating that it was her understanding that she was entitled to 50% of the Policy proceeds under Arizona community property laws because she had married the Decedent on December 1, 2014, six months before his death. [ECF No. 1-7]. The Policy terms incorporate the laws of the state in which the policy is

---

[1] Although it appears American Capital was served with the complaint in this matter [ECF No. 11], it has not made an appearance.

delivered. [ECF No. 1-8]. The Policy indicates it was delivered in the state of Arizona, where Decedent resided from the time he was covered under the Policy until his death. *Id.*

After his death, the Policy proceeds became subject to distribution. Companion filed this interpleader action pursuant to Fed. R. Civ. P. 22 and 67 and Local Civ. Rules 67.01 (D.S.C.), asserting it was not able to determine each defendant's portion of the Policy proceeds, if any. On December 1, 2015, Plaintiff filed a motion to deposit the Policy proceeds into the court's registry, for attorney's fees, and to be dismissed from the case. [ECF No. 26]. The defendants did not respond to the motion. The court granted the motion by Order dated January 11, 2016, granting Companion's attorney's fees and costs of $3,501.88, accepting the net Policy proceeds of $56,498.12 into the court's registry, and dismissing Companion. [ECF No. 28]. The Order noted: "Each Defendant and their agents, attorneys, representatives, assigns, and all other persons claiming at any time, are perpetually enjoined and restricted from initiating or pursuing any proceeding in this or any other court of law or equity against Plaintiff on account of the Policy." *Id.* at 7.

On May 9, 2016, the undersigned issued a report and recommendation ("Report") recommending that the court grant Bankett's motion for judgment on the pleadings as to her entitlement to the policy proceeds, but deny her request for attorneys' fees. [ECF No. 51]. The report further stated:

> Finally, to the extent that American Funeral and C&J asserted protective cross-claims against Bankett for breach of contract and unjust enrichment, they represent that if Bankett's motion is granted, it would moot their cross-claims, "provided she agrees to the disbursement . . . of the principal amount owed to [them], plus all other funds owed" under the assignments,

3

> including their attorneys' fees [ECF No. 41 at 7; ECF No. 42 at 7]. Bankett did not file responses to the cross-memoranda in support of judgment by American Funeral and C&J. Therefore, it appears that Bankett concurs in the assessment that she is liable to them for funds claimed.

*Id*. No objections to the Report were filed and the Honorable Mary Geiger Lewis, United States District Judge, adopted it and incorporated it into the court's order by reference. [ECF No. 54].

On June 3, 2016, Financial Firms filed a motion for attorneys' fees with an accompanying affidavit by their counsel, detailing counsel's experience and time spent on this matter. [ECF No. 57]. On June 20, 2016, Bankett filed a motion for attorneys' fees and costs and response to Financial Firms' motion. [ECF No. 58]. Financial Firms filed a reply on July 8, 2016. [ECF No. 64]. The matter having been fully briefed, it is ripe for disposition.

II.   Discussion

    A.   Bankett's Motion for Attorneys' Fees

Bankett has previously requested attorneys' fees and the undersigned recommended this request be denied in the Report. After receiving no objections to the Report, the court adopted it and denied Bankett's request for attorneys' fees. To the extent Bankett now has additional theories of the party from whom she requests attorneys' fees, she should have raised her request previously, as she has had multiple opportunities in briefing or in objections to the Report. The undersigned recommends Bankett's motion for attorneys' fees be denied, consistent with the court's prior orders.

B.	Financial Firms' Attorneys' Fees

To the extent Bankett argues another party is responsible for paying Financial Firms' attorneys' fees, she has waived this argument. In the prior Report, the undersigned noted that because she had not filed responses to the Financial Firms' cross-memoranda, it appeared she concurred in the assessment that she was liable to them for the funds claimed, which included attorneys' fees. [ECF No. 51 at 7]. Bankett did not file any objections challenging this finding and the court adopted it.

Bankett argues that the attorneys' fees submitted by counsel for Financial Firms are unreasonable. In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court considers the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *Jackson v. Estelle's Place, LLC*, 391 Fed. App'x 239, 243–44 (4th Cir. 2010). Although the court must consider all twelve of the factors, it need not rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be

considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir.1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this court's Local Civ. Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Civ. Rule 54.02(A) (D.S.C.).

With these factors in mind, the court considers Financial Firms' motion for attorneys' fees. Financial Firms submitted the affidavit of Anthony E. Rebollo, Esq. Mr. Rebollo stated that he billed Financial Firms at an hourly rate of $275 and his associate billed at an hourly rate of $210 in this matter. [ECF No. 57-1]. The attorneys' fees totaled $6,432.50 plus $60.26 in costs at the time the motion was filed. Additionally, in their reply, Financial Firms cited the *United States Consumer Law Attorney Fee Survey Report for 2013–2014*, which states that the average billable rate for the South region at that time was $313/hour and the median rate was $300/hour. [ECF No. 64 at 4]. The reply also states that Financial Firms were billed for a total of 25.6 hours of work, broken down as follows: 2.8 hours in September 2015; 6.8 hours in October 2015; .8 hours in November 2015; 2.3 hours in December 2015; 11.3 hours in January 2016; and 1.6 hours in February 2016. *Id.* at 1–2. Financial Firms note that, while this was not a complicated matter, it involved an attention to detail for two separate clients, which required separate

6

answers to the complaint and crossclaims pursuant to two separate contracts. Here, counsel was successful in obtaining results for Financial Firms. Additionally, Bankett is able to pay the attorneys' fees with the proceeds of the Policy. Therefore, after a consideration of the *Barker* factors, the undersigned finds it appropriate to award attorneys' fees to the Financial Firms in the amount of $6,492.76.[2]

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Bankett's motion for attorneys' fees [ECF No. 58] be denied and Financial Firms' motion for attorneys' fees [ECF No. 57] be granted in the amount of $6,492.76. This amount is additional to the disbursements of $8,533.87 to American Funeral and $3,757.73 to C&J. Any remaining balance should be disbursed to Bankett, including any interest accrued thereon.[3]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 22, 2016                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[2] Mr. Rebollo's affidavit also estimated that an additional $500 would be spent to dispose of this case. [ECF No. 57-1]. Because those fees could not be shown by affidavit, and in the interest of finality, the undersigned has not included an additional $500 in the recommendation for attorneys' fees award.

[3] Although the court has previously found that Bankett is not entitled to an award of interest on the amount of the death benefit, the undersigned recommends she be granted any interest accumulated while held by the court in an interest-bearing account.

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).